UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    AVALANCHE, LLC,                           Case No. 09-34010-dof
                                                          Chapter 11 Proceeding
            Debtor.                                Hon. Daniel S. Opperman
_____/

## Opinion Regarding Valuation of Real Property
## Located at 5371 Daly Farms Drive, Burton, Michigan

Avalanche, LLC, the Debtor in this case, operates an ice arena located at 5371 Daly Farms Drive, Burton, Michigan. The Debtor has two ice rinks suitable for hockey games, ice skating competitions, and general ice skating activities. The Debtor's facility also includes locker rooms, general public areas, food and beverage services, as well as associated services connected to ice skating.

The Debtor has operated its facility since 1998 and enjoyed success from inception to approximately 2005 when the National Hockey League ("NHL") did not operate. From 2005, the Debtor suffered continuing operating losses. From 1998 to the present, the Debtor has operated its facility consistent with the general use of ice skating. Mr. Jeffrey Brayan, a principal of the Debtor, testified that the Debtor intends to continue using the facility as it has since 1998 and has no plans to change the general use of the facility. On July 27, 2009, the Debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code and has operated under the protection of this Court since that date.

In its proposed Chapter 11 Plan, the Debtor seeks to reduce the secured claim it owes to Zions First National Bank ("Zions"). The Debtor's original Chapter 11 Plan proposed to pay Zions

1

$242,038. In contrast, the proof of claim filed by Zions is in the amount of $1,991,710.06. The Debtor proposes to reduce Zions' claim because it asserts the value of the facility, which is the security for the obligation owed by the Debtor to Zions, is $242,038. Since Zions objected to the Debtor's proposed treatment in its Chapter 11 Plan, the Court conducted a series of evidentiary hearings to determine the value of the property.

At these hearings, the Debtor supported its position by testimony of Michael Kennan, an appraiser, and Brian Hall, a general contractor in Flint. Mr. Kennan's testimony was based upon the notion that it is difficult, if not impossible, to value the facility as an ice arena, and that a valuation by proxy is required. Mr. Kennan's proxy was light industrial property in the Genesee County area, and his opinion was based upon a classic comparison of the subject property with other comparable light industrial properties. Mr. Hall's testimony detailed the costs that would be incurred to renovate the existing facility and make it into a light industrial property.

In contrast, Zions argues that the Court should look at the use of the property in question and value the property accordingly. In the alternative, Zions disputes the analysis of Mr. Kennan and offered the testimony of Mark Bollinger who took issue with Mr. Kennan's analysis, as well as the cost estimates of Mr. Hall.

The Debtor has since amended its Chapter 11 Plan and proposes to pay Zions $177,160, after taking into account various real estate taxes and tax liens that take priority over the interest of Zions. At the conclusion of the evidentiary hearing, the Debtor, through counsel, urges this Court to value its facility at $200,000.

Given the nature of this case, the Court allowed the parties to submit briefs regarding this matter. After consideration of the briefs filed by the parties in this case, the Court concludes that

the facility in question must be valued at its current use and not as a light industrial facility. The Debtor has not offered sufficient testimony as to the value of the facility with its current use, so the Court therefore rejects either the $242,038, or $200,000 value as advanced by the Debtor.

## Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) (determination as to the validity, extent, or priority of liens) and (L) (confirmation of plans).

## Applicable Statute

11 U.S.C. § 506(a)(1) states:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

## Analysis

The testimony of Mr. Brayan at the March 23, 2010, hearing clearly establishes the intent of the Debtor to continue operations at the facility as it has since 1998. The Debtor's intention is not to convert some or all of its facility for a light industrial use or for warehousing purposes. The Debtor's original Plan and First Amended Plan are based upon the continued use of the facility in the same general fashion as the Debtor has used the facility since 1998. Likewise, a review of the Debtor's Disclosure Statement and Plan and First Amended Disclosure Statement and Plan reveals that there is no anticipated use of the facility in a light industrial or warehousing capacity.

11 U.S.C. § 506(a)(1) requires the Court to determine value in light of the purpose of the valuation and the proposed disposition or use of the property. Here, there is no evidence whatsoever that the Debtor intends to use the property as anything other than an ice arena and its ancillary uses. 11 U.S.C. § 506(a)(1) clearly prohibits the proposed valuation method urged by the Debtor.

In addition, the United States Supreme Court *In re Associates Comm'l Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879 (1997) held that in a Chapter 13 setting a court is to consider the use of the property when determining valuation. *Rash*, 520 U.S. at 965. Although *Rash* is nominally distinguishable because the instant case is a Chapter 11 and *Rash* was a Chapter 13, a comparison of the cram down provisions of Chapter 11 and 13 leads the Court to conclude the *Rash* court's rationale applies in this case as well. *See e.g., Financial Security Assur., Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 799 (5th Cir. 1997); *Mulvania v. United States (In re Mulvania)*, 214 B.R. 1, 9-10 (B.A.P. 9th Cir. 1997); *In re National Book Warehouse, Inc.*, 2007 WL 5595524, at *5 (Bankr. M.D. Tenn. May 23, 2007). In this case, as in *Rash*, the Court must look at the Debtor's proposed use of the property and the market in which the Debtor operates in order to determine the value.

The Debtor chose to engage the services of an appraiser who was not able to place a value on the Debtor's facility in its current use. The Court understands and respects Mr. Kennan's honesty in that regard, but is prohibited by statute and Supreme Court authority from adopting his view, even if the Court wished to do so.

The Court suspects that Mr. Kennan is absolutely correct in that the classic sales comparable approach that many appraisers use simply does not apply in this case. Other methods are available, however, such as the replacement cost, as well as the income approach. Although Mr. Kennan

briefly outlined the problems with such approaches, either approach could be of assistance to the parties and the Court. In addition, the expansion of a sales comparable approach to include a much larger geographical area could allow the Court to arrive at a determination of the value of the facility.

By way of example, an appraiser could look at the income generated by the Debtor since 1998 and arrive at a number that would be available to not only service the obligation to Zions, but also generate an investment return to a potential buyer. Alternatively, an appraiser could look for similar facilities in similar markets outside of Genesee County and outside of the State of Michigan to determine a value. For this alternative, the Court points to an example keeping within the general business and sport in which the Debtor is engaged. The Phoenix Coyotes, the NHL franchise located in Arizona, filed a Chapter 11 bankruptcy petition and is currently up for sale. If given the same task as Mr. Kennan was given, an appraiser would not simply drive around the general Phoenix metropolitan area, determine that there are no other NHL franchises in which to compare the Phoenix Coyotes and then pick a comparable industry to determine the value of the franchise. Instead, a much more expansive view would need to be taken.

Although the Court concludes that the Debtor has not met its burden of proof as to the value, the Court likewise does not subscribe to the value placed by Zions of $3,440,000. Mr. Kennan and Mr. Bollinger both agree on certain key points, namely that the general Flint area is in severe economic distress and that there are many industrial facilities that have been on the market for a number of years that still have not been sold despite severe reduction in price. While it is true that the Debtor's facility is truly state of the art, it is unlikely anyone would pay the cost to build the facility or the replacement costs of the facility.

The approach mandated by the Bankruptcy Code and recommended by *Rash* is to examine the use of the facility and then determine the value of that use. Here, the Debtor has not demonstrated the value of the present use, and will be afforded the opportunity to do so. Once that value is offered by the Debtor to Zions, Zions can then make an informed decision as to whether it wishes to continue or renew its objections to the Debtor's Plan. If Zions elects to accept the Debtor's Plan, then the Debtor can reorganize. If Zions elects to continue its objections to the Debtor's Amended Plan, then Zions may face the prospect of owning and perhaps operating the facility in the future.

<u>Conclusion</u>

For the reasons stated in this opinion, the Court sustains the objections of Zions First National Bank to the Debtor's determination of value of property located at 5371 Daly Farms Drive, Burton, Michigan and denies confirmation of the Amended Plan of the Debtor. The Court will conduct a telephonic status conference regarding this matter on **Wednesday, September 8, 2010, at 1:30 p.m.** Counsel for Zions First National Bank is directed to prepare an order consistent with this opinion.

**Signed on August 16, 2010**

                                                         **/s/ Daniel S. Opperman**
                                                       **Daniel S. Opperman**
                                                       **United States Bankruptcy Judge**